Citation Nr: 1706019 
Decision Date: 02/28/17 Archive Date: 03/03/17

DOCKET NO. 09-36 750 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to an initial disability rating in excess of 20 percent for service-connected diabetes mellitus type II.

2. Entitlement to service connection for hypertension.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

S. Anwar, Associate Counsel




INTRODUCTION

The Veteran has active service in the United States Army from September 1969 to September 1971, to include duty in Vietnam.

This matter comes before the Board of Veterans' Appeals (Board) from a January 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia which granted a 20 percent disability rating for diabetes mellitus type II but denied service connection for hypertension, to include as secondary to the service-connected diabetes mellitus type II. The case was remanded in December 2012 and April 2016 for procedural and evidentiary development. All actions ordered by the remands have been accomplished and the case is ready for appellate review.


FINDINGS OF FACT

1. The Veteran does not require regulation of activities to treat his diabetes mellitus type II.

2. The Veteran does not allege, and the record does not demonstrate, that hypertension was incurred in service or within the first post-service year; the evidence does not support a finding that diabetes mellitus type II caused, nor aggravated beyond the natural progression, the Veteran's current hypertension.


CONCLUSIONS OF LAW

1. The criteria for an initial disability rating in excess of 20 percent for diabetes mellitus type II have not been met. 38 U.S.C.A. §§ 1110, 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.119, Diagnostic Code 7913 (2016).

2. The criteria for service connection for hypertension have not been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran contends he is entitled to a higher initial disability rating for his diabetes mellitus type II because he requires insulin shots, is on a restricted diet, and has had to alter his physical activity after his initial diabetic diagnosis. Regarding his hypertension, the Veteran contends his hypertension is aggravated by his service-connected diabetes mellitus type II.

Duty to Notify and Assist

VA has satisfied its duties under the Veteran's Claims Assistance Act of 2000 (VCAA) to notify and assist. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107; 
38 C.F.R. §§ 3.102, 3.159, 3.326(a).

Regarding claims for increased disability ratings, there need only be generic notice advising the Veteran of the evidentiary and legal criteria for establishing his entitlement to a higher rating, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The RO issued a notice letter to the Veteran in January 2009 that met the VCAA notice requirements.

Regarding claims for service connection, VA has made reasonable efforts to obtain relevant records and evidence. Specifically, the information and evidence that have been associated with the claims file include VA treatment records, VA examination reports, and the Veteran's statements. The Veteran has not identified any outstanding records that need to be obtained prior to adjudication of the appeal.

The Veteran was afforded VA examinations in February 2014, November 2015 and May 2016. When VA undertakes to provide an examination, it must ensure that the examination is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The VA examinations are informed and adequate. The VA examiners reviewed the Veteran's medical history and current symptoms, made clinical observations, and rendered opinions regarding the severity of the disability. In addition, the VA examiners addressed all the relevant rating criteria for rating diabetes mellitus, including the functional impact of the Veteran's disability upon his occupational and social functioning.

VA has satisfied its duties to notify and assist and the Board may proceed with appellate review.

Increased Rating - Diabetes Mellitus Type II 

Disability ratings are determined by applying criteria set forth in VA's Schedule for Rating Disabilities. Ratings are based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. See 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Where there is a question as to which of two evaluations should be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7. 

For claims for increased ratings which arise out of an initial grant of service connection, the Board must consider the application of "staged" ratings for different periods from the filing of the claim forward, if the evidence suggests that such a rating would be appropriate. See Fenderson v. West, 12 Vet. App. 119 (1999).

The Veteran's service-connected diabetes mellitus type II is rated as 20 percent disabling under Diagnostic Code (DC) 7913. A 40 percent rating is warranted where insulin, restricted diet, and regulation of activities (avoidance of strenuous occupational and recreational activities) is required. A 60 percent rating is warranted for diabetes mellitus requiring insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per year or twice-a-month visits to a diabetic care provider, plus complications that would not be compensable if separately evaluated. A 100 percent rating is warranted for diabetes mellitus requiring more than one daily injection of insulin, restricted diet, and regulations of activities, with episodes of ketoacidosis or hypoglycemic reactions requiring at least three hospitalizations per year or weekly visits to a diabetic care provider, plus either progressive loss of weight and strength or complications that would be compensable if separately evaluated. 38 C.F.R. § 4.119.

The criteria for rating diabetes mellitus are conjunctive, meaning that each element of the criteria is needed to meet the requirements for the specified evaluation. See Camacho v. Nicholson, 21 Vet. App. 360 (2007); see also Melson v. Derwinski, 1 Vet. App. 334 (1991) (use of the conjunctive "and" in a statutory provision means that all of the conditions listed in the provision must be met). In order for the Veteran to receive a higher initial rating for his diabetes mellitus type II, evidence must show that there are physician-directed restrictions on the Veteran's physical activities. 

The Veteran contends he is entitled to a higher rating because, after his March 2008 hospitalization and initial diagnosis, his activities were "altered." The Board acknowledges that the Veteran has had to alter his activities by taking insulin shots and following a restricted diet in order to manage his illness; however, these altered activities do not include physician-prescribed restrictions on his physical activities which are required for the next-higher rating. 

The Veteran was diagnosed with new onset diabetes mellitus type II in March 2008 when he was hospitalized with elevated blood sugar levels. In order to manage his initial diagnosis, the Veteran was required to take insulin and go on a restricted diet. In April 2008, the Veteran's physician reported the Veteran's diabetes mellitus type II requires insulin and a restricted diet, but no regulation of activities, and that there were no complications directly due to his diabetes. The Veteran filed his claim in March 2008, and the RO granted a 20 percent disability rating. 

The February 2014 VA examination indicated the Veteran's diabetes mellitus type II is managed by more than one insulin shot daily and a restricted diet, but without restrictions on activities. He did not have frequent visits to his diabetic care provider for ketoacidosis or hypoglycemia, nor any episodes requiring hospitalization in the last year. 

The Veteran was noted to have no loss of strength or weight gain attributable to diabetes, nor did he have any recognized diabetic complication, including no confirmed diagnosis of diabetic nephropathy. As it bears on the question of physician-prescribed restriction of activities, the Veteran reported he would golf three times a week and exercise on the treadmill for 15 minutes twice daily. The VA examiner reported the Veteran's control on his diabetes has been "good" and that "there is no evidence that [V]eteran has required limitation on his activity in order to help control his sugars." 

The November 2015 VA examination indicated the Veteran's diabetes continues to require insulin and a restricted diet, but no regulation of activities. The Veteran's frequency of care, hospitalizations and lack of complications, including no diabetic nephropathy, were the same as the February 2014 examination. While the VA examiner noted the Veteran's diabetes impacted his ability to work because the Veteran reported he is easily fatigued and has difficulty with strenuous activity, he noted the Veteran did not require regulation of activities as part of the medical management of his illness. 

The May 2016 VA examination reported similar medical findings to the previous examinations with the exception that the examiner opined the Veteran's diabetes did not impact his ability to work. He did not have any episodes of ketoacidosis or hypoglycemia requiring hospitalization in the last 12 months nor any progressive unintentional weight or strength loss attributable to diabetes. He did not have any recognized complications, such as diabetic peripheral neuropathy, diabetic nephropathy or renal dysfunction, diabetic retinopathy, or peripheral vascular disease related to his diabetes. The examination noted the Veteran has hypertension and kidney disease, but the examiner opined neither were due to diabetes because the hypertension diagnosis preceded the diabetes mellitus type II diagnosis by approximately eight years, and the chronic kidney diseases is possibly due to hypercalcemia, given the Veteran's history of using nonsteroidal anti-inflammatory drugs (NSAIDs) in 2011.

Accordingly, there is no evidence the Veteran has physician-directed restrictions on occupational and recreational activities and therefore a 40 percent disability rating is not warranted. 

Extra-Schedular and Total Disability Rating Considerations

 The Board has also considered whether referral for extra-schedular consideration is warranted. In exceptional cases where schedular ratings are found to be inadequate, consideration of an extraschedular evaluation is made. 38 C.F.R. § 3.321 (b)(1); Thun v. Peake, 22 Vet. App. 111 (2008). In this case, the record does not establish that the rating criteria are inadequate. 

The medical findings, such as frequency of insulin, the need for a restricted diet, the need for a restriction on activities, episodes and hospitalizations due to ketoacidosis or hypoglycemic, and testing for diabetes-related complications, are "like or similar to" those explicitly listed in the rating criteria, which considers symptoms such as impairment of health, incapacitating episodes, and chronic residuals. Mauerhan v. Principi, 16 Vet. App. 436, 443 (2002). Moreover, the Veteran has not expressly raised the matter of entitlement to an extraschedular rating. His contentions have been limited to those discussed above, that his diabetes mellitus type II requires additional management than is reflected by the assigned rating. 

In view of the circumstances, the Board finds that the rating schedule is adequate and referral for extraschedular consideration is not needed under the circumstances of this case. Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). Accordingly, referral for consideration of an extraschedular rating is not warranted.

A claim for a total rating based on individual unemployability (TDIU) due to service-connected disability, either expressly raised by the Veteran or reasonably raised by the record, involves an attempt to obtain an appropriate rating for a disability and is part of the claim for an increased rating. Rice v. Shinseki, 22 Vet. App. 447 (2009) In this case, the Veteran has not reported and the evidence does not reflect, that his disability at issue render him unemployable. The most recent VA medical examination noted the Veteran's condition did not impact the Veteran's ability to work. The condition initially presented with fatigue and dizziness, but these symptoms have not manifested to such a degree as to impact the Veteran's ability to maintain or obtain employment. Accordingly, the Board concludes that a claim for a TDIU has not been raised.

Service Connection - Hypertension 

Applicable law provides that service connection will be granted if it is shown that the Veteran experiences a disability resulting from an injury or disease contracted in the line of duty, or for aggravation of a preexisting injury or disease contracted in the line of duty, in the active military, naval, or air service. 38 C.F.R. § 3.303 (a). Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303 (d).

Service connection may be established on a secondary basis for a disability which is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310 (a). Additional disability resulting from the aggravation of a nonservice-connected condition by a service-connected condition is also compensable under 38 C.F.R. § 3.310 (b). See Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc).

Hypertension, as a cardiovascular-renal disease, is a "chronic disease" listed under 
38 C.F.R. § 3.309 (a). Therefore, the presumptive service connection provisions based on "chronic" in-service symptoms and "continuous" post-service symptoms under 38 C.F.R. § 3.303 (b) apply. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Where the evidence shows a "chronic disease" in service or "continuity of symptoms" after service, the disease shall be presumed to have been incurred in service. 38 C.F.R. § 3.303 (b). 

 Additionally, where a veteran served ninety days or more of active service, and certain chronic diseases, such as hypertension, become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumptive period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. Id.

"Hypertension" refers to persistently high arterial blood pressure. Medical authorities have suggested various thresholds ranging from 140 mm Hg systolic and 90 mm Hg diastolic to as high as 200 mm Hg systolic and 110 mm Hg diastolic as reflective of hypertension. See Dorland's Illustrated Medical Dictionary, 896 (32nd ed. 2012). Similarly, for VA rating purposes, the term "hypertension" means that the diastolic blood pressure is predominantly 90 mm Hg or greater. The term "isolated systolic hypertension" means that the systolic blood pressure is predominantly 160 mm Hg or greater with a diastolic blood pressure of less than 90 mm Hg. See 38 C.F.R. § 4.104, Diagnostic Code 7101, Note (1). For VA purposes, hypertension or isolated systolic hypertension must be confirmed by readings taken two or more times on at least three different days. Id. 

The Veteran contends his service-connected diabetes mellitus type II disability aggravates his hypertension. He has presented evidence that the medical community finds diabetes and hypertension interrelated, and that often a diagnosis of one will precede a diagnosis for the other. He has not alleged a claim for direct service connection for hypertension due to active service and the record does not demonstrate evidence of high blood pressure readings during service, or for the initial post-service year. The Board will thus focus its attention on the Veteran's claim for service connection on a secondary basis. 

The Veteran has had essential hypertension since 2000, eight years prior to his diabetes mellitus type II diagnosis. The May 2016 VA examiner opined that due to the progression of time, the Veteran's hypertension was not caused by his diabetes. The examiner also noted the lab results for diabetic nephropathy from May 2015 and March 2016 were "well controlled." The examiner opined "[a]s the Veteran does not have diabetes mellitus nephropathy, his hypertension cannot be aggravated by his diabetes mellitus." 

The Veteran's lay assertions that his diabetes aggravates his hypertension are unsubstantiated assertions of a medically "complex" question that cannot be given significant probative weight. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (holding that while lay people may, in some circumstances, speak competently as to matters of diagnosis or etiology, such circumstances are not met when the medical question involved is "complex" in nature). According to the medical examiner, the existence of nephropathy is the determinative factor for finding the Veteran's diabetes has aggravated his hypertension. The Veteran does not have a current diagnosis of diabetic nephropathy. The medical evidence indicates the Veteran has never had a confirmed diagnosis of nephropathy since his diabetes mellitus type II diagnosis. As the hypertension predated the diabetes mellitus type II and the Veteran does not demonstrate symptoms of diabetic nephropathy, the Veteran is not entitled to service connection on a secondary basis because the evidence does not show that the Veteran's diabetes is aggravating his hypertension. 

VA is statutorily required to resolve the benefit of the doubt in favor of the Veteran when there is an approximate balance of positive and negative evidence regarding the merits of an outstanding issue. That doctrine is not applicable in this case because the preponderance of the evidence is against the Veteran's claim. 38 U.S.C.A. § 5107 (b); see also Ortiz v. Principi, 274 F.3d 1361, 1364, 1365 (Fed. Cir. 2001) (holding that "the benefit of the doubt rule is inapplicable when the preponderance of the evidence is found to be against the claimant"); Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).









ORDER

Entitlement to an initial disability rating in excess of 20 percent for diabetes mellitus type II is denied.

Entitlement to service connection for hypertension is denied.



____________________________________________
Vito Clementi
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs